UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORILLARD TOBACCO COMPANY,

    Plaintiff,

v.

Case No. 10-13296

Honorable Patrick J. Duggan

AMANA OIL, INC. d/b/a 16 AND
HARPER MOBIL,

    Defendant.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 7, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

On August 20, 2010, Lorillard Tobacco Company ("Plaintiff") filed this action, alleging that Amana Oil, Inc., doing business as 16 and Harper Mobil ("Defendant"), had infringed on Plaintiff's trademarks by selling counterfeit cigarettes. Presently before the Court is Plaintiff's motion for summary judgment, filed on March 17, 2011. The matter has been fully briefed, and the Court heard oral argument on May 24, 2011. For the reasons stated below, the Court grants Plaintiff's motion in part and denies it in part.

### I. Factual and Procedural Background

Plaintiff manufactures and sells cigarettes, including the Newport brand of cigarettes.

To protect the value of the brand, Plaintiff has registered several trademarks used in the sale of Newport cigarettes. These include the words "Lorillard" and "Newport," stylized text versions of "Lorillard" and "Newport," a "Spinnaker" design, and the design of the Newport Menthol Box. Decl. Victor Lindsley ¶ 4, Pl.'s Mot. Summ. J. Ex. 1.

Defendant operates a gasoline station and convenience store in Clinton Township, Michigan. Defendant's president, Osman Basha, oversees the store, which is primarily run by Defendant's three employees. Ashraf Ali manages the store during the morning shift. Ali Dep. 10:17-20, Feb. 15, 2011. Defendant's store sells, among other products, Newport cigarettes.

Ali generally purchases the store's cigarettes from two suppliers, Sam's Club and a distributor named Abraham & Sons. Ali Dep. 18:14-20. During July 2010, however, Ali purchased cigarettes from an unknown man. This man entered the store and explained to Ali that he was closing a store, but had Newport and Marlboro Light cigarettes remaining in his inventory that he wished to sell. Ali Dep. 19:9-10. The man offered the cigarettes at a price of $48 per carton, a discount from Sam's Club's price of $59.82 per carton. Ali made a telephone call to Basha, who approved the purchase of fifteen cartons of Newport cigarettes. Ali Dep. 19:10-15. The same man returned to the store a few weeks later and explained that he still had cigarettes left to sell. Ali again contacted Basha, who approved the purchase of fifteen cartons of Newport cigarettes. Ali Dep. 23:8-10. After a few more weeks, the man again returned to the store. Ali purchased ten more cartons of Newport cigarettes from him, this time without contacting Basha. Ali Dep. 25:13-25. Ali told Basha about the purchase later, and Basha warned Ali not to purchase anything else from

the man because "there is something wrong with the guy or he's stealing the cigarettes." Ali Dep. 38:16-23.

On August 18, 2010, Plaintiff's sales representative purchased two packages of Newport cigarettes from Defendant's store and suspected that they were counterfeit. Decl. Anne Sterling ¶ 4, Pl.'s Mot. Summ. J. Ex. 4. She forwarded them to Edward O'Brien, an employee of Plaintiff with specialized knowledge of its packaging. O'Brien noted several anomalies in the cigarettes' packaging that suggested counterfeiting, including unusually sharp print on the packaging, elastic tape in the cellophane wrapping, and out-of-date product codes. O'Brien Decl. ¶¶ 4-11, Pl.'s Mot. Summ. J. Ex. 5. Based on these anomalies and an inspection of the cigarettes, O'Brien determined that Plaintiff had not manufactured or packaged the cigarettes. *Id.* ¶ 12.

On August 20, 2010, Plaintiff filed this suit, asserting claims of unfair competition and trademark counterfeiting and infringement under federal and Michigan law. Because the alleged counterfeit items are highly portable and easily destroyed or concealed, Plaintiff moved for an *ex parte* order allowing the seizure of counterfeit cigarettes at Defendant's store. Plaintiff filed a motion to seal the records relating to this proceeding until the seizure was conducted. District Judge Victoria A. Roberts granted Plaintiff's motions, and the seizure was conducted on August 27, 2010. Three cartons and eleven loose packs of counterfeit Newport cigarettes were seized from Defendant's inventory of Newport cigarettes, which consisted of approximately sixty cartons in total. This Court subsequently lifted the order sealing the file, and the parties stipulated to the entry of a preliminary injunction prohibiting further infringement on Plaintiff's trademarks.

On March 17, 2011, Plaintiff moved for summary judgment. Plaintiff argues that there is no genuine dispute of fact concerning Defendant's liability for offering and selling counterfeit Newport cigarettes. Plaintiff has elected the statutory damages permitted under 15 U.S.C. § 1117(c) for its damages for all of the asserted claims. Plaintiff argues that the record demonstrates willful or reckless disregard for Plaintiff's trademarks, subjecting Defendant to increased damages under to 15 U.S.C. § 1117(c). Plaintiff seeks damages of $200,000 for each of the eight trademarks infringed upon, for a total award of $1,600,000.

In its response, Defendant concedes its liability for infringement, and disputes only the damages sought. Defendant argues that an enhanced award is not justified because it was unaware of counterfeit cigarettes in its inventory.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. at 2553.

4

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).  To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient.  *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor.  *Id.* at 255, 106 S. Ct. at 2513.  The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant."  *Id.*, 106 S. Ct. at 2514.

## III. Discussion

### A. Requirements for Imposing Increased Damages

The parties dispute the appropriate standard for imposing an enhanced award of damages.  Plaintiff asserts that recklessness will suffice, while Defendant contends that intentional infringement is necessary to justify such an award.  The Lanham Act provides:

> In a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of -
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold,

offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). The statute does not define "willful" in the context of § 1117(c)(2), and the Court notes, as have other courts in this district, that the Sixth Circuit has yet to provide guidance on the proper interpretation of the term. *See Lorillard Tobacco Co. v. Yazan's Serv. Plaza, Inc.*, 2007 U.S. Dist. LEXIS 45612, at *14 (E.D. Mich. June 25, 2007).

The United States Supreme Court recently addressed the interpretation of the term "willful," albeit in the context of the Fair Credit Reporting Act, in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201 (2007). The Supreme Court noted, "'willfully' is a 'word of many meanings whose construction is often dependent on the context in which it appears.'" *Id.* at 57, 127 S. Ct. at 2208 (quoting *Bryan v. United States*, 524 U.S. 184, 191, 118 S. Ct. 1939, 1944-45 (1998)). The Court observed that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Id.* at 57, 127 S. Ct. at 2208. Thus, in the context of the Fair Credit Reporting Act, the Court held that a "willful" failure to comply with the statute also included a reckless violation. *Id.* at 57, 127 S. Ct. at 2209.

Based on the holding of *Safeco*, the *Yazan's* court concluded that even reckless violations of the Lanham Act could justify an enhanced award under § 1117(c). *Yazan's Serv. Plaza, Inc.*, 2007 U.S. Dist. LEXIS 45612, at *16. The Court finds this reasoning persuasive. As the statute provides no contrary indication, the Court interprets the term "willful" according to its common law meaning. The Court therefore concludes that the statute allows an enhanced award where infringement was intentional or reckless.

**B. Application to Defendant's Conduct**

Accepting Defendant's evidence as true and drawing all justifiable inferences in its favor, the Court concludes that there is a genuine dispute concerning whether Defendant infringed on Plaintiff's trademarks intentionally or recklessly. Defendant claims that neither Ali nor Basha were aware of the existence of counterfeit cigarettes, and Plaintiff has not introduced evidence conclusively establishing otherwise. Defendant discontinued the purchases of cigarettes from the unidentified man after Basha became suspicious of him, indicating that any infringement was unintentional. Plaintiff may believe that the characteristics of these sales should have aroused suspicion earlier, but Plaintiff has not produced evidence indicating that Defendant's actions were unreasonable. For example, Plaintiff notes that Defendant purchased the Newport cigarettes at a discount from their usual cost, suggesting counterfeiting. Yet Plaintiff has failed to point to any evidence indicating that the discount was so large as to arouse the suspicions of a reasonable store owner or employee as to the cigarettes' origin. Plaintiff also has failed to establish that the number of cartons offered for sale by the unidentified man was so great that it would immediately indicate counterfeiting. There is no evidence suggesting that either Basha or Ali could identify counterfeit Newport products, and the Court notes that even Plaintiff's sales representative could not conclusively identify the product obtained from Defendant's store as counterfeit. Defendant's infringement certainly may have been reckless, but the evidence supporting this conclusion is not strong enough for the Court to find recklessness as a matter of law. Plaintiff's motion for summary judgment must therefore be denied to the extent that it seeks an enhanced damage award under 15 U.S.C. § 1117(c)(2).

7

**C. Determination of an Appropriate Damages Award**

Plaintiff has elected statutory damages, and while the Court has concluded that an enhanced award is not justified, 15 U.S.C. § 1117(c)(1) allows for damages even in cases of negligent infringement. The statute provides for damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Id.* Statutory damages are intended to compensate the plaintiff for losses incurred and deter future infringement. *Johnson v. Jones*, 149 F.3d 494, 504 (6th Cir. 1998) (citing *F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 73 S. Ct. 222, 226 (1952)).

Accepting Defendant's evidence as true and drawing all reasonable inferences in its favor, as the Court must, the Court concludes that the award sought by Plaintiff is not justified by the facts. The evidence suggests that Defendant more than likely purchased the counterfeit cigarettes from the unidentified man, and that these purchases consisted of forty cartons of counterfeit cigarettes. The evidence further indicates that these purchases were only made just before the August 2010 seizure, as Defendant has produced receipts for purchases of a substantial number of cartons of Newport cigarettes from Sam's Club in mid-July 2010. *See* Pl.'s Mot. Summ. J. Ex. 7. Because a small number of cigarettes are at issue, Plaintiff cannot show that it incurred substantial losses. There is also no evidence that Defendant accrued large gains, as even if it had sold all of the discounted cigarettes, its additional profit would have been less than $500. Furthermore, because Defendant's conduct demonstrates efforts to avoid infringement, the Court does not believe that a large award is justified by the need to deter future misconduct. The Court therefore concludes

that an award near the lower end of the statutory range is appropriate. The Court believes that an award of $2,000 per counterfeit mark per type of good sold would serve the compensatory and deterrent purposes of the statutory damages provision. As eight marks and only one type of product are at issue, this results in a damages award of $16,000.

### D. Permanent Injunction

In its motion for summary judgment, Plaintiff requested a permanent injunction to prevent future infringement upon its trademarks by Defendant. As Defendant's response to the motion did not indicate any opposition to this request, the Court grants a permanent injunction prohibiting future infringement of Plaintiff's trademarks by Defendant.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for summary judgment is **GRANTED** with respect to Defendant's liability;

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment is **DENIED** to the extent that it requests an increased award of damages pursuant to 15 U.S.C. § 1117(c)(2);

**IT IS FURTHER ORDERED** that a permanent injunction is **GRANTED** prohibiting infringement upon Plaintiff's trademarks by Defendant.

s/PATRICK J. DUGGAN  
UNITED STATES DISTRICT JUDGE

Copies to:  
Kathleen A. Lang, Esq.  
Kelly M. Haladyna, Esq.  
Brian C. Summerfield, Esq.